Eugene Ashley, Esq. (Bar No. 171885)
Eashley@hopkinscarley.com
Mary Elizabeth Cirone, Esq. (Bar No. 257951)
Mcirone@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
3500 West Olive Avenue, Suite 300
Burbank, CA 90505
Tel: (818) 827-7136
Fax: (818) 973-2707

Jack I. Siegal, Esq. (Bar No. 218088)
jsiegal@nbparis.com
NYSTROM BECKMAN & PARIS LLP
One Marina Park Drive, 15th Floor
Boston, Massachusetts 02210
Tel: (617) 778-9100
Fax: (617) 778-9110

Attorneys for Plaintiff

FILED
13 MAR -7 PM 2:51
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ESG CAPITAL PARTNERS, LP, a Delaware Limited Partnership and LIMITED PARTNERS,

Plaintiffs,

v.

TROY STRATOS a/k/a "Ken Dennis," VENABLE LLP; and DAVID MEYER, and DOES 1 – 10, inclusive,

Defendants.

Case No. CV13-01639 VBK

**COMPLAINT FOR DAMAGES, EQUITABLE RELIEF AND DEMAND FOR JURY TRIAL**

BY FAX

**COMPLAINT**

Plaintiffs ESG Capital Partners, LP and its limited partners (collectively "ESG" or "Plaintiffs"), bring this Complaint against Defendants Troy Stratos, a/k/a Ken Dennis ("Stratos"), Venable LLP ("Venable") and David Meyer ("Meyer") (collectively, "Defendants"):

**INTRODUCTION**

Operating under the alias "Ken Dennis" and aided by Venable, one of America's largest and preeminent law firms, Troy Stratos misappropriated more than $11.25 million from Plaintiffs who sought to purchase shares of Facebook stock in the private market prior to its initial public offering (the "Facebook Scheme"). Instead of procuring Facebook shares, Stratos has publicly admitted that he spent ESG's funds on luxury cars, development of a Las Vegas restaurant/bar, production of an alleged Nike commercial, and repayment of millions of dollars in personal debt from various personal loans and other lawsuits. Stratos is currently the subject of multiple federal criminal investigations both for his role in the Facebook Scheme and for an unrelated $7 million scam of Nicole Murphy (the ex-wife of entertainer Eddie Murphy), for which he has been detained since December 2011. Previously, Stratos was criminally charged in France with fraud and operating under a false identify. In short, Stratos is the quintessential con man, who has twice been denied bail in the Nicole Murphy criminal matter because of the court's finding that he poses an "economic danger" to the community:

> All right. I -- at this point I -- I'm not satisfied that terms and conditions can be put in place that would protect the community, in particular those whose funds the defendant has already come into possession [i.e., Plaintiffs' funds] of as well as others that he may be about to come into possession of.

(Hearing re: Further Detention Hearing Tr. January 23, 2012 ("Jan. 23 Hr. Tr.") at 189 (2:11-cr-00537LKK) (Doc. #28)).

As detailed below, Venable and its then-partner defendant David Meyer were central players who aided and abetted Stratos in the Facebook Scheme. Stratos represented himself to ESG as "Ken Dennis," purported aid-de-camp to a Mexican billionaire with direct access to pre-IPO Facebook shares. Venable, for its part, served as "Ken Dennis'" attorneys. Throughout the Facebook Scheme, Venable: (i)

confirmed to ESG that "Ken Dennis" was who he purported to be, and never disclosed that Dennis was an imposter; (ii) arranged for the ESG securities transaction; (iii) drafted the deal document; (iv) assisted "Ken Dennis" in opening bank accounts; (v) directed and held $2.8 million of ESG's funds in its law firm's client trust fund account; and (vi) directed funds to be wired to Dennis' account.

Incredibly, Venable itself knew that "Ken Dennis" was really con artist Stratos. Indeed, during this period of time, Venable was actually defending Stratos in the fraud lawsuit brought by Nicole Murphy. In short, Venable not only perpetrated the fraud -- it legitimized it and actively participated in a fake Facebook transaction on behalf of a client it knew was a charlatan.

Not surprisingly, despite paying $11.25 million, no Facebook shares were ever delivered to ESG. When ESG reached out to Venable for information, the law firm went radio silent and refused to return ESG's increasingly frantic calls. Through his arrest in the Nicole Murphy case in December 2011, ESG learned that "Dennis" was an imposter. To date, and as a result of the Facebook Scheme, ESG has suffered more than $15 million in damages, including actual losses, interest, and consequential and punitive damages.

## PARTIES

1. Plaintiff ESG Capital Partners, LP is a Delaware limited partnership with its principal place of business in Philadelphia, Pennsylvania.

2. Plaintiff C. Baggini is an individual who resides in Radnor, Pennsylvania.

3. Plaintiff ABC Trust is a trust located in Pittsburgh, Pennsylvania.

4. Plaintiff P. J. Beach is an individual who lives in Naples, Florida.

5. Plaintiff K. M. Beach is an individual who lives in Naples, Florida.

6. Plaintiff T. H. Blue is an individual who resides in Eagles Spring, North Carolina.

7. Plaintiff D. S. Brumbaugh is an individual who resides in Berwyn,

Pennsylvania.

8. Plaintiff S. Brumbaugh is an individual who resides in Easton, Pennsylvania.

9. Plaintiff M. A. Carleo is an individual who lives in South Hamilton, Massachusetts.

10. Plaintiff L. A. Dean is an individual who resides in West Lake, Ohio.

11. Plaintiff R. J. Garry is an individual who resides in Mamaroneck, New York.

12. Plaintiff W. Y. Giles is an individual who resides in Villanova, Pennsylvania.

13. Plaintiff Grey Dog Trust is a trust located in Point Pleasant, New Jersey.

14. Plaintiff WKG Family Trust is a trust located in Boston, Massachusetts.

15. Plaintiff P. H. Imbesi is an individual who resides in North Wales, Pennsylvania.

16. Plaintiff Lubfam Investments, LP is a limited partnership with its principal place of business in Wilimington, Delaware.

17. Plaintiff Kisimul Management, LLC is a limited liability company with its principal place of business in Wayne, Pennsylvania.

18. Plaintiff B. Kronish is an individual who resides in New York, New York.

19. Plaintiff P. Kronish is an individual who resides in New York, New York.

20. Plaintiff J. A. Lewis is an individual who resides in Summerfield, North Carolina.

21. Plaintiff GJM Trust is a trust that is located in Phoenix, Maryland.

22. Plaintiff the M. E. Ausherman Revocable Trust is a trust located in

Frederick, Maryland.

23. Plaintiff C. McHugh is an individual who resides in Newtown Square, Pennsylvania.

24. Plaintiff H. F. McMeekin is an individual who resides in Newtown Square, Pennsylvania.

25. Plaintiff Mindrew's 2003 Mega Trust is a trust located in Bethesda, Maryland.

26. Plaintiff S. J. Negrotti JTWROS is an individual who resides in Berwyn, Pennsylvania.

27. Plaintiff J. Negrotti JTWROS is an individual who resides in Berwyn, Pennsylvania.

28. Plaintiff B. R. Ohlemacher is an individual who resides in Rocky River, Ohio.

29. Plaintiff DEF Trust is a trust that is located in Pittsburgh, Pennsylvania.

30. Plaintiff A. Salvatore is an individual who lives Naples, Florida.

31. Plaintiff C. M. Salvatore is an individual who lives in Mattawan, Michigan.

32. Plaintiff J. Schaedler is an individual who resides in Bay Village, Ohio.

33. Plaintiff H. Scharfman Revocable Trust 12/25/07 is a trust located in Chicago, Illinois.

34. Plaintiff R. D. Siefert is an individual who resides in Fairfield, Connecticut.

35. Plaintiff K. Simonetti is an individual who resides in Jamison, Pennsylvania.

36. Plaintiff J. S. Small is an individual who resides in Wayne, Pennsylvania.

37. Plaintiff J. W. Small is an individual Darien, Connecticut.

38. Plaintiff T. R. Trala, Jr. JTWROS is an individual who resides in Malvern, Pennsylvania.

39. Plaintiff M. M. Trala JTWROS is an individual who resides in Malvern, Pennsylvania.

40. Plaintiff E. Turner is an individual who resides in Paoli, Pennsylvania.

41. Plaintiff E. Turner GRAT is a trust located in Paoli, Pennsylvania.

42. Plaintiff R. E. Turner is an individual who resides in Paoli, Pennsylvania.

43. Plaintiff C. Turner is an individual who resides in Paoli, Pennsylvania.

44. Plaintiff R. Turner 94 Trust is a trust located in Paoli, Pennsylvania.

45. Plaintiff Turner Foundation is a charitable foundation with its principal place of business in Paoli, Pennsylvania.

46. Plaintiff 2010 R. T. Grandkids Trust is a trust located in Paoli, Pennsylvania.

47. Plaintiff 2011 R. T. Grandkids Trust is a trust located in Paoli, Pennsylvania.

48. Plaintiff W. V. Venters is an individual who resides in Wilmington, North Carolina.

49. Plaintiff R. Williams is an individual who resides in Haverford, Pennsylvania.

50. Plaintiff J. A. Wylie is an individual who resides in Haverford, Pennsylvania.

51. Plaintiff J. Zarlenga is an individual who resides in Canfield, Ohio.

52. Plaintiff L. Zarlenga is an individual who resides in Canfield, Ohio.

53. Defendant Troy Stratos is an individual currently held in federal custody in Northern California. He is a criminal defendant in a matter styled U.S.A. v. Stratos, 2:11-cr-00537-LKK, U.S. District Court, Eastern District of

California (Sacramento). Upon information and belief, Stratos is being detained in Yolo County, California.

54. Venable LLP is a large (over 1,100 employees) prestigious national law firm formed under the laws of the State of Maryland. Venable is headquartered in Baltimore, but also has offices in New York, the District of Columbia, Virginia and California. Additional information concerning Venable is set forth on its website at venable.com.

55. David Meyer is an attorney licensed to practice law in the State of California and who, upon information and belief, resides in or around Los Angeles, California. During all relevant times herein, Meyer was a partner at Venable. In June 2012, Meyer left Venable and became a partner at the law firm Arent Fox LLP, a position he holds as of the date of this Complaint.

## JURISDICTION AND VENUE

56. The claims asserted herein arise under and pursuant to, among other things, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), (15 U.S.C. §§78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

57. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

58. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b). Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District. Additionally, Defendant Stratos is incarcerated in California, Defendant Venable has an office in this Judicial District and Defendant Meyer works and, upon information and belief, resides within this Judicial District.

59. In connection with the acts, conduct and other wrongs alleged in this

Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails and interstate telephone, email and text message communications.

## FACTS

**The Facebook Scheme**

60. An established market existed for pre-IPO shares of successful high tech companies. Employees at later stage companies sell shares in order to gain liquidity not normally available until at least 180 days after the initial public offering itself, due to the "lock-up period." For a purchaser, the pre-IPO shares presented an opportunity to arbitrage by buying the stock at a fixed price (which may be at a discount from the expected IPO price).

61. In early 2011, ESG Capital Partners, LP was formed and capitalized with $13 million by approximately 55 investors in order to purchase pre-IPO Facebook shares. To effectuate that purchase, ESG used SharesPost, a firm that matches buyers and sellers of late stage equity investments of pre-IPO companies, to identify Facebook sellers.

62. After some initial starts and stops, ESG was introduced ESG to "Ken Dennis" (a/k/a Troy Stratos), who sold himself as a representative of Mexican billionaire Carlos Slim. "Ken Dennis" told ESG that he was an executive of Soumaya Securities LLC, a firm that handled financial transactions for Mr. Slim. To add to his air of legitimacy, "Soumaya" is the name of Mr. Slim's late wife. "Dennis" claimed to have direct connections to Facebook senior executives willing to sell pre-IPO shares, and told ESG that he could deliver a large block of those shares.

**Venable's Representation of Stratos and Central Role in the Facebook Scheme**

63. Prior to the ESG transaction, and commencing no later than 2010, Troy Stratos was a Venable client and, as detailed herein, remained a client of the law firm throughout the Facebook Scheme.

64. Venable served as Stratos' counsel in connection with the civil action filed by Nicole Murphy against Stratos in September 2010, entitled Nicole Murphy v. Troy Stratos, et. al., 2:10-cv-06956-VBF-E CDCA ("Nicole Murphy Lawsuit"). In general, the Nicole Murphy Lawsuit alleges that Stratos stole at least $7 million that she received as part of her divorce settlement with entertainer Eddie Murphy. Ms. Murphy further alleges that Stratos induced her to invest funds in Dubai and the United Arab Emirates, but instead used her money to fuel his extravagant lifestyle.

65. Venable vigorously defended Stratos in the Nicole Murphy lawsuit. Indeed, throughout much of 2011 -- at the same time it was representing "Ken Dennis" with respect to ESG -- Venable filed a series of motions on Stratos' behalf, including a motion to dismiss the lawsuit and a detailed motion for sanctions against Ms. Murphy in which Venable portrayed Stratos as a victim of overzealous lawyering.

66. In February 2011, in the midst of the Nicole Murphy Lawsuit, Venable assisted Stratos, now acting under the name "Ken Dennis," in the formation of a Delaware LLC called "Soumaya Securities." According to Stratos:

> It, you know, let me just say, Soumaya Securities, LLC came at the advice of my attorney of record, David Meyer, who's at Venable and, you know, we – he wanted a corporate or an LLC name that could be used and we used that one.

(Jan. 23 Hr. Tr at 94). According to Stratos, Venable also retained for Soumaya Securities an accountant named Mark Chapman "under lawyer/client privilege to host not just Soumaya Securities but all of my accounting activities. . ." (Jan. 23 Hr. Tr at 99). Soumaya Securities had no legitimate business or income stream, and was merely a shell used to collect ESG funds and perpetrate the Facebook Scheme.

67. In spring 2011, ESG, through its managing agent, and "Ken Dennis"

began negotiating the terms of the purported Facebook transaction. Stratos had a simple explanation when asked at his bail hearing why he didn't tell ESG that his name was Troy Stratos: "[b]ecause of what is online. Have you read it?" (Jan. 23 Hr. Tr. at 163), referring to the myriad news reports of his legal troubles and con games.

68. To further his ploy, "Ken Dennis" directed ESG's managing agent to his attorney, David Meyer, a Venable partner.

69. ESG in turn had several communications with Mr. Meyer at Venable about the bona fides of "Ken Dennis," Soumaya Securities, and the proposed Facebook transaction.

70. Defendant Meyer specifically represented to ESG that "Ken Dennis" was who he purported to be – namely, a representative of Carlos Slim and an executive of Soumaya Securities LLC, the entity that would act as a purported intermediary to facilitate the exchange of cash and shares between ESG and Facebook.

71. Meyer made these representations, among others, to ESG knowing that they were false. Meyer knew, when he made these representations that "Dennis" had no relationship with Mr. Slim and that he could not deliver any Facebook shares. As a corollary, Meyer knew, should have known and/or was reckless in not knowing that "Dennis" (Stratos) had not lined up any potential sellers of pre-IPO Facebook shares that he could deliver to ESG.

72. Notably, Venable was at the same time <u>representing Stratos as Troy Stratos</u>. Thus, Venable knew, through Meyer and otherwise, that "Ken Dennis" was really con man Troy Stratos.

73. In short, Venable confirmed the bona fides of "Ken Dennis," and the legitimacy of the proposed Facebook sale, which Meyer himself referred to as "a pending securities transaction."

74. On or about April 19, 2011, in reliance on statements made by all of

the Defendants, ESG wired $2.8 million into a Venable Client Trust Account, pursuant to instructions forwarded to ESG by Meyer's legal assistant.

75. Law firms, such as Venable, owe fiduciary duties to third parties (such as Plaintiffs) when holding their funds in escrow or trust accounts. Accordingly, Venable owed Plaintiffs fiduciary duties when Plaintiffs transferred $2,800,000 to Venable on April 19, 2011.

76. Venable's fiduciary duties to ESG encompassed, at a minimum, an obligation to inform Plaintiffs of any potential problem or issue concerning their funds - - let alone that "Dennis" was really Stratos.

77. After receipt of the initial ESG funds, Venable continued to aid and abet Stratos in the Facebook Scheme. Specifically, in a series of emails between July 11-12, 2011 with ESG, Venable, which was purportedly acting on behalf of Soumaya Securities, confirmed the terms of the Facebook transaction between the parties. Mr. Meyer wrote to ESG's managing agent:

> Mr. Burns [ESG managing agent]:
>
> Set forth below are the wire instructions for the Soumaya Securities Account:
>
> Soumaya Securities LLC
> Bank: Bank of America
> Name of Account: Soumaya Securities LLC
> Account #: REDACTED
> ABA #: REDACTED
> Swift Code: REDACTED
> Bank Address: 2049 Century Park East, Los Angeles, CA 90067
> It Soumaya's understanding that you will wire $11,200,000 in two installments the first of which in the amount of $7,200,000 will transfer on Monday and the balance of $4,000,000 will

> follow at the time you receive the purchase documentation you have requested from the issuer and the seller in the pending securities transaction. (emphasis added).

78. Of course, as Meyer knew when he made this statement, there was no "pending securities transaction" at all.

79. Indeed, ESG thereafter requested a telephone conference with Meyer. But instead, Meyer sent a second e-mail a couple hours after his first email:

> Tim [Burns, ESG's managing agent], I am in meetings most of the day, but Soumaya has requested that I send you the below email in letter form (which I will do) and requests your confirmation that the moneys described below are non-refundable except in the event the pending transaction does not close as a result of the fault of the seller or the issuer. (emphasis added).

80. Meyer next sent the "electronic correspondence" on Venable letterhead confirming the "pending transaction" yet again. (A copy of the letter is attached as Exhibit A). Pursuant to Meyer's instructions, and relying upon the representations of all the defendants, the next day, on July 12, 2011 ESG wired the second tranche of $7.2 million into the Soumaya account.

81. Despite Meyer's assurance that ESG would receive "purchase documentation," ESG never received anything further.

82. Instead, on or about August 12, 2011, Venable sent new wire instructions for Soumaya Securities -- this time to a UBS account. In response, ESG wired an additional $1.25 million into the account per Venable's instruction, bringing the total funds advanced by ESG to $11.25 million (with the April wire of $2.8 million, and the July wire of $7.2 million).

**Venable's Assistance in Opening Bank Accounts for Stratos**

83. According to Stratos, Venable was instrumental in opening the bank

accounts used to deposit the ESG funds at Bank of America and UBS.

84. Specifically, Stratos testified under oath that as a result of earlier criminal charges brought against him in France, as well as his publicized trouble with Nicole Murphy, he was "black listed" and could not open a bank account without Venable assistance on his behalf:

> I went into Bank of America in Century City, which is at the base of a law firm that represented me, Venable was the firm. I'm sorry if I'm speaking too quickly, and I presented my documents. My lawyers came down and they explained the situation. They presented the fact that I was a victim of internet slander and I was being maligned and they sat down with the banking representatives and the Bank of America had decided at that time to open the account. I attempted to open accounts elsewhere; Wells Fargo, various banks, and they turned me down. Wells Fargo accepted my check – accepted money, but – from the – that came from my law firm to open the account but then it – they had refunded it back and didn't, in fact, allow me to do business at Wells Fargo. We tried various other banks to try to set up a personal checking and savings account, but they were unsuccessful.

(Jan 23 Hr. Tr. at 31). In short, Venable was a sine qua non of the fraud because, without Venable's help, Stratos' scheme would not have gotten off the ground. As Stratos himself put it, his own reputation would have prevented him from even opening a bank account.

85. The Bank of America account into which ESG wired $7.2 million was subsequently shut down, presumably because of Stratos' reputation and/or legal woes.

86. But even after the Bank of America account was closed, Venable

continued to help Stratos perpetrate his scheme:

A. Yes. The Soumaya Securities LLC account at B of A had been closed and I had – the monies that were in it were refunded to me. Or to Soumaya. I then took those monies to my law firm. I said what do I do now and they said we can open a broker account for you and we can – to where you can cash this money and utilize it as you need it and we can also put it in client trust account and we can help you in your transition while we search for a bank."

Q. And which firm was this.

A. Venable.

(Jan 23 Hr. Tr. at 33).

**The Scheme Exposed**

87. Throughout the Fall of 2011, ESG was repeatedly strung along by "Ken Dennis" with various excuses as to why the Facebook transaction had not closed. Venable, for its part, went radio silent and despite facilitating this transaction and directing the transfer of over $11 million, did nothing to see the transaction to conclusion -- undoubtedly because Venable knew the entire transaction, and indeed "Ken Dennis" himself, was a sham.

88. ESG attempted on multiple occasions to reach Meyer by telephone, but its calls after July 2011 were never returned.

89. The Facebook Scheme ultimately unraveled in December 2011 when, following a grand jury investigation, Stratos was arrested and held on federal charges stemming from his misappropriation of Ms. Murphy's funds. Incredibly, Stratos attempted to continue the "Ken Dennis" charade from prison, having messages texted to ESG that he was "unavailable" and "out of cell coverage."

90. Ultimately, however, Stratos was undone when federal investigators

reached out to ESG. Stratos, though, despite the overwhelming evidence, refused in his bail hearing to admit he was "Ken Dennis" -- at one point actually asking: "[I]f you're thinking I'm trying to be Mr. Dennis for the sake of Mr. Burns [ESG's managing agent] to defraud him, you're mistaken as well." (Jan 23 Hr. Tr. at 124-125). Ironically, Stratos claimed that even after his arrest "Ken Dennis" was still working "to put together [an operating agreement] with the law firm Venable." Id. at 118.

91. Upon information and belief, Meyer was terminated and/or asked to resign by Venable as a result of his role in the Facebook Scheme.

92. Under agency law and the doctrine of respondeat superior, however, Venable remains liable for Meyer's actions in addition to its own.

**COUNT I**
**Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

93. Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 92 of this Complaint as though fully set forth herein.

94. At all relevant times herein, Defendants carried out a plan, scheme and course of conduct which was intended to and did: (1) deceive Plaintiffs as alleged herein; and (2) caused Plaintiffs to enter into a contract to purchase securities and transfer funds in furtherance of that contract to Defendants as alleged herein, which Defendants then stole. In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein.

95. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon Plaintiffs for the purposes of enriching themselves.

96. Defendants, directly and indirectly, by the use, means or

instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to convince Plaintiffs to enter into a contract to purchase securities, and pursuant to that contract, pay Defendants at least $11,250,000, with no intention of honoring that securities contract or providing the securities and otherwise to conceal adverse material information about Defendants' true status, the status of the Facebook transaction and their fraudulent intentions.

97.     Defendants employed devices, schemes, and artifices to defraud and engaged in the acts, practices and course of conduct as alleged herein in an effort to assure Plaintiffs of their ability to procure and deliver Facebook shares.

98.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available.  Such material misrepresentations and/or omissions were done knowingly or recklessly and for the purposes of convincing Plaintiffs to enter into the investment contract and, in performance of that contract, tendered over $11,250,000, which Defendants stole.

99.     The material misrepresentations by Defendants include, but are not limited to, Stratos' statements to Plaintiffs during the relevant period that (1) he was "Ken Dennis," (2) he was affiliated with billionaire Carlos Slim, (3) he had the ability to provide pre-IPO Facebook shares, (4) Plaintiffs' payment of $11,250,000 would be for the purchase of pre-IPO Facebook shares, and, as evidenced by numerous text messages Stratos sent to ESG, (5) the Facebook Scheme was on track to close but delayed for various reasons notwithstanding that Stratos was in custody.

100.   As explained herein, each of these statements was false when made because "Ken Dennis" was really Stratos (an infamous con artist), Stratos had <u>no</u> affiliation with Carlos Slim, Stratos had <u>no</u> ability to provide pre-IPO Facebook

shares (and had no intention of doing so), and the Facebook Scheme was bogus and a front for Stratos, Venable and Meyer to steal Plaintiffs' money.

101. Material misrepresentations made by Meyer include, but are not limited to, his communications with ESG (orally and in writing) that "Ken Dennis" was "who he purported to be" (i.e., that Stratos was really "Ken Dennis" and a representative of Carlos Slim), Plaintiffs' funds were to be transferred as part of a bona fide "pending securities transaction" and Plaintiffs should expect to receive their shares (which did not exist) and further transaction documentation when Meyer had no intention of providing Plaintiffs with either.

102. Meyer's misstatements identified above and otherwise herein are imputed to Venable because of his status as a "partner." Venable's additional material misstatements/omissions include its failure to alert ESG to the fact that "Ken Dennis" was really Troy Stratos when Venable received Plaintiffs' funds into its trust account and acted as escrow agent. Indeed, as alleged herein, Venable had a fiduciary duty to alert Plaintiffs that "Ken Dennis" was Stratos.

103. Venable knowingly and substantively assisted Stratos' fraud by, among other things, accepting Plaintiffs' funds and opening bank accounts to facilitate the scheme, which Stratos could not do without Venable's assistance.

104. At the time of the material misrepresentations and omissions, Plaintiffs were ignorant of their falsity and believed them to be true. Had Plaintiffs known of the truth, they would not have sent more than $11,250,000 to Defendants. Indeed, the material misrepresentations and omissions caused Plaintiffs' harm.

105. As a direct and proximate cause of the Defendants' wrongful conduct, Plaintiffs suffered damages in connection with Facebook transaction.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT II**
**Fraud**
**Against All Defendants**

106. Plaintiffs incorporate and reallege the allegations set forth in

paragraphs 1 through 105 of this Complaint as though fully set forth herein.

107. In order to induce Plaintiffs to enter into the Facebook Scheme, Defendants represented to Plaintiffs, among other things, that they would use Plaintiffs' funds to procure shares of Facebook stock.

108. In order to further induce Plaintiffs to enter into the Facebook Scheme, David Meyer, acting in his capacity as a partner of Venable, represented to Plaintiffs, among other things, that Stratos was "Ken Dennis," "Ken Dennis" was a representative of Carlos Slim and an executive of Soumaya Securities LLC, Plaintiffs' funds were to be transferred as part of a bona fide "pending securities transaction," and Plaintiffs should expect to receive their shares (which did not exist) and further transaction documentation when Meyer had no intention of providing Plaintiffs with either.

109. Meyer's misstatements identified above and otherwise herein are imputed to Venable because of his status as a "partner." Venable's additional material misstatements/omissions include its failure to alert ESG to the fact that "Ken Dennis" was really Troy Stratos when Venable received Plaintiffs' funds into its trust account and acted as escrow agent. Indeed, as alleged herein, Venable had a fiduciary duty to alert Plaintiffs that "Ken Dennis" was Stratos.

110. Plaintiffs are informed and believe and thereon allege that these material representations made by Defendants were in fact false. Plaintiffs are informed and believe, and on that basis allege, that the true facts are that Defendants intended to obtain a total sum of more than $11,250,000.00 in payments from Plaintiffs without intending to actually purchase Facebook shares on Plaintiffs' behalf and with the intention of retaining Plaintiffs' payments.

111. Plaintiffs are informed and believe and thereon allege that Defendants knew these material representations to be false at the time they were made, and these material representations were made with the intention to deceive and defraud Plaintiffs and to induce Plaintiffs to act in reliance on the representations.

Specifically, the material representations were made with the intention, and had the effect, of, among other things, inducing Plaintiffs to wire payments of approximately $11,250,000.00 to accounts controlled by the Defendants.

112. Plaintiffs, at the time these material misrepresentations were made by Defendants and at the time Plaintiffs took the actions herein alleged, were ignorant of the falsity of the representations and believed them to be true. In reliance on these material misrepresentations, Plaintiffs were induced to and did, among other things, wire payments to Defendants of approximately $11,250,000.00. Had Plaintiffs known the actual facts, they would not have taken such action.

113. Plaintiffs' reliance on Defendants' material misrepresentations was justified, particularly given, among other things, Meyer's assurances that "Ken Dennis" and Soumaya Securities LLC were legitimate and that "Ken Dennis" could procure Facebook shares for Plaintiffs.

114. As a proximate result of Defendants' intentional material misrepresentations, as herein alleged, Plaintiffs have suffered damages which will be established according to proof at trial, in an amount in excess of this Court's minimum jurisdiction.

115. The aforementioned conduct of Defendants constitute intentional misrepresentations, deceits, and/or concealments of material facts known to Defendants, with the intention on the part of Defendants to thereby deprive Plaintiffs of property or legal rights or otherwise cause injury, and was despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT III**
**Negligent Misrepresentation**
**Against Meyer And Venable**

116. Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 115 of this Complaint as though fully set forth herein.

117. Defendants Meyer and Venable made false representations to Plaintiffs without a reasonable belief or investigation into the accuracy of their representations, knowing and intending that Plaintiffs would rely on their representations.

118. The representations made by Meyer and Venable to Plaintiffs, as set forth in paragraphs 63 through 82 of this Complaint, were representations of material facts, which were relied upon by Plaintiffs in making their decision to wire transfer funds to accounts owned by Soumaya Securities and Venable and the amounts which Plaintiffs transferred to those accounts.

119. Defendants Meyer and Venable, in making the representations set forth in paragraphs 63 through 82 of this Complaint, did so without a reasonable belief in the accuracy and truthfulness of those representations.

120. Plaintiffs reasonably relied upon Defendants Meyer and Venable's representations and as a result have been damaged in the amount of no less than $11,250,000.00.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**COUNT IV**
**Breach of Contract**
**Against Defendant Troy Stratos**

121. Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 120 of this Complaint as though fully set forth herein.

122. ESG and Stratos entered into a binding securities purchase agreement whereby Stratos (posing as "Ken Dennis") agreed to provide Plaintiffs with pre-IPO Facebook shares in exchange for millions of dollars. Plaintiffs have performed all covenants, conditions and promises required under their securities purchase agreement with Stratos (the "Agreement") to be performed on their part, except as waived, excused or prevented by Stratos's breach.

123. As set forth above, Stratos breached the Agreement by virtue of having repudiated the Agreement without any justification, failing and refusing to use

Plaintiffs' wire payments to procure shares of Facebook, failing and refusing to provide Plaintiffs with Facebook share certificates and stealing Plaintiffs' payments without permission, among other things.

124. As a direct and proximate result of Stratos's breach of the Agreement, Plaintiffs have suffered damages which will be established according to proof at trial, in an amount in excess of this Court's minimum jurisdiction.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT V**
**Conversion**
**Against All Defendants**

125. Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 124 of this Complaint as though fully set forth herein.

126. By virtue of the conduct alleged above, Defendants wrongfully, fraudulently, and maliciously retained and converted Plaintiffs' funds for their own use, with full knowledge that Plaintiffs were the lawful and beneficial owners of said funds and were entitled to the exclusive rights thereto.

127. As a proximate result of Defendants' conversion as herein alleged, Plaintiffs have been damaged in an amount to be proven at trial, but presently known to be not less than $11,250,000.00.

128. As demonstrated by the course of conduct alleged above, Defendants' acts were malicious, fraudulent and oppressive, and done in conscious disregard of Plaintiffs' rights, thereby entitling Plaintiffs to punitive damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT VI**
**Breach of Fiduciary Duty**
**Against Meyer and Venable**

129. Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 128 of this Complaint as though fully set forth herein.

130. By virtue of the facts alleged above, Meyer and Venable had fiduciary

duties towards Plaintiffs, including, but not limited to: (a) the duty to inform Plaintiffs that their payments into Venable's escrow account would not be used to purchase shares of Facebook stock, but rather would be stolen by Defendants; (b) the duty to inform Plaintiffs that "Ken Dennis" was, in fact, Troy Stratos; and (c) the duty to inform Plaintiffs that Soumaya Securities LLC was (i) not a legitimate business entity and (ii) was not affiliated with Carlos Slim.

131. In acting and failing to act as alleged above, Meyer and Venable breached their fiduciary duties towards Plaintiffs, resulting in actual damages to Plaintiff in an amount to be proven at trial.

132. As demonstrated by the course of conduct alleged above, Defendants acted with fraud, oppression, and malice, warranting the imposition of punitive damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT VII**
**Conspiracy**
**Against All Defendants**

133. Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 132 of this Complaint as though fully set forth herein.

134. Plaintiffs are informed and believe, and thereon allege, that the Defendants knowingly and willfully entered into an agreement and conspiracy to defraud Plaintiffs by embezzling funds rightfully belonging to Plaintiffs, concealing such embezzlement, and by using the misappropriated funds for their own purposes.

135. Plaintiffs are informed and believe, and thereon allege, that pursuant to the aforementioned agreement and conspiracy, the Defendants committed the illegal acts alleged above and distributed the misappropriated funds, or portions thereof, to themselves.

136. Plaintiffs are further informed and believe, and thereon allege, that Meyer and Venable knew, among other things, that Stratos had unlawfully

misappropriated funds belonging to Plaintiffs, and consented to receiving such unlawfully obtained funds for their own personal use.

137. As a proximate result of the Defendants' conspiracy to defraud Plaintiffs as herein alleged, Plaintiffs have been damaged in an amount to be proven at trial, but presently known to be not less than $11,250,000.00.

138. As demonstrated by the course of conduct alleged above, the Defendants' acts were malicious, fraudulent and oppressive, and done in conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT VIII**
**Unfair Competition (BUS. & PROF. CODE § 17200)**
**Against All Defendants**

139. Plaintiffs incorporate by reference paragraphs 1 through 138 of this Complaint as though fully set forth herein.

140. The aforementioned conduct including, among other things, the improper actions taken by Defendants to engage in a scheme to induce Plaintiffs' to wire payments to Defendants' accounts for the purpose of purchasing Facebook shares, which payments were then stolen by Stratos for his personal use. Defendants' actions collectively amount to unlawful business practices, are unethical, are substantially injurious to consumers, constitute unfair business practices, constitute fraudulent business practices, and constitute unfair competition pursuant to Business and Professions Code section 17200.

141. As a result of Defendants' conduct as alleged herein, Plaintiffs have been damaged in an amount to be proven at trial and are entitled to the remedies available under Business and Professions Code section 17200 et seq., including but not limited to, injunctive relief and restoration of money or property acquired by means of Defendants' wrongful acts.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**COUNT IX**
**Unjust Enrichment**
**Against All Defendants**

142. Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 141 of this Complaint as though fully set forth herein.

143. Defendants were the recipients of the ill-gotten and misappropriated funds from Plaintiffs' wire payments. Defendants received and accepted the misappropriated funds with knowledge that they had no legitimate claim to any portion of the funds, and knew or should have known that Plaintiffs were the true and proper owners of the funds. Despite this knowledge, Defendants maintained possession of the misappropriated funds or otherwise used the funds for their personal use.

144. Plaintiffs, as a matter of law and in equity and good conscience, are therefore entitled to restitution from Defendants constituting the value of the misappropriated funds in an amount to be proven at trial, but presently known to be not less than $11,250,000.00.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**COUNT X**
**Imposition of a Constructive Trust**
**Against All Defendants**

145. Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 144 of this Complaint as though fully set forth herein.

146. By means of false and fraudulent misrepresentations, the Defendants, among other things, misappropriated and converted for their own personal use and possession funds properly belonging to Plaintiffs in a sum equal to no less than $11,250,000.00. Such misappropriation and conversion was done without Plaintiffs' knowledge or consent.

147. Plaintiffs are informed and believe, and thereon allege, that beginning in or before July 2011, Defendants misappropriated Plaintiffs' payments from accounts created for the purpose of purchasing Facebook shares.

148. By virtue of Defendants' wrongful acts as alleged herein, they hold the misappropriated and converted funds described above, worth an amount of no less than $11,250,000.00, in a constructive trust for the benefit of Plaintiffs.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**COUNT XI**
**Aiding And Abetting**
**Against Meyer And Venable**

149. Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 148 of this Complaint as though fully set forth herein.

150. Stratos intentionally defrauded Plaintiffs and committed other malfeasance as described herein.

151. Meyer and Venable substantially assisted Stratos in perpetrating his fraud and other malfeasance against Plaintiffs.

152. Meyer and Venable had actual knowledge of Stratos' fraud and other malfeasance against Plaintiffs. Additionally, as alleged herein, Meyer and Venable owed Plaintiffs' fiduciary duties.

153. As such, Meyer and Venable aided and abetted Stratos and are liable to Plaintiffs to the same degree.

154. Plaintiffs have suffered damages as alleged herein.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL**

WHEREFORE, Plaintiffs pray for trial by jury and request that the Court:

A. Enter judgment in favor of ESG and against Defendants on all Counts;

B. Award ESG compensatory damages in an amount to be determined at trial;

C. Impose a constructive trust on Stratos in favor of ESG for the proceeds (including profits and fees) from unlawful activity relating to Plaintiffs;

D. Award ESG punitive damages in an amount to be determined at trial appropriate to the severity of Defendants' conduct;

E. Award ESG its costs and interest; and

F. Such other and further relief as this Court may deem just and proper.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL CLAIMS SO TRIABLE.**

Respectfully submitted,

Dated: March 7, 2013

HOPKINS & CARLEY
A Law Corporation

By: ______________________
Eugene Ashley, Esq. Bar No. 171885
EAshley@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation

316\987099.1