O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESG CAPITAL PARTNERS, LP, and LIMITED PARTNERS,<br><br>　　　　　　　Plaintiffs,<br>　　v.<br>TROY STRATOS aka "Ken Dennis," VENABLE LLP, DAVID MEYER, and DOES 1–10, inclusive,<br>　　　　　　　Defendants. | Case No. CV 13-01639 ODW(SHx)<br><br>**ORDER GRANTING MOTION TO DISMISS [50] AND ORDER TO SHOW CAUSE RE. LACK OF PROSECUTION** |

## I.　INTRODUCTION

Plaintiff ESG Capital Partners, LP and its limited partners originally filed a Complaint against Defendants Troy Stratos, Venable LLP, and David Meyer alleging that Defendants defrauded Plaintiffs in connection with a purported purchase of pre-IPO Facebook shares. ESG wired some $11.25 million via Venable to Stratos's alleged shell company to purchase the shares. But it turned out that there were no shares, as Stratos had allegedly concocted the scheme to defraud Plaintiffs.

The Court previously granted Defendants' motion to dismiss the Complaint, finding that Plaintiffs failed to adequately plead three crucial elements under the Private Securities Litigation Reform Act ("PSLRA"). After Plaintiffs filed their First

Amended Complaint ("FAC"), Defendants once again moved for dismissal. Since Plaintiffs have not, and cannot, cure their pleading shortcomings, the FAC is **DISMISSED WITH PREJUDICE**.[1]

## II. FACTUAL BACKGROUND

In February 2011, Plaintiffs allege that Venable, Meyer, and Stratos "hatched a scheme" to hide Stratos's identity as an alleged con artist.[2] (FAC ¶ 69.) Meyer and Stratos had over 100 telephone calls and 25 in-person meetings between February and November 2011. (*Id.* ¶ 75.) Meyer then formed Soumaya Securities, LLC for Stratos. (*Id.* ¶¶ 70–71.) The company's name allegedly stems from the name of billionaire Carlos Slim's late wife. (*Id.* ¶ 72.) But despite Defendants' alleged representations, Slim had no connection with either Soumaya Securities or Stratos. (*Id.* ¶ 73.)

In early 2011, approximately 55 investors formed ESG Capital Partners as a limited partnership and capitalized it with $13 million to purchase pre-IPO Facebook shares. (*Id.* ¶ 79.) A securities broker put ESG in touch with Stratos, who was acting under the alleged alias "Ken Dennis." (*Id.* ¶ 80.)

Stratos represented to Timothy Burns, the managing agent of ESG, that he was an executive of Soumaya and that Soumaya made securities investments on behalf of Slim. (*Id.* ¶¶ 80, 82.) Around March 22 and 24, 2011, Burns and Stratos spoke over the telephone about ESG's possibility of purchasing Facebook shares. (*Id.* ¶ 81.) Stratos claimed that he could acquire a large block of these shares for $27 each. (*Id.* ¶ 83–84.) Stratos also informed Burns that Meyer represented Stratos and Soumaya in connection with the share purchase. (*Id.* ¶ 85.) On March 31, 2011, Meyer had "multiple" telephone conversations with Stratos about the Facebook transaction. (*Id.* ¶ 86.)

---

[1] After carefully considering the papers filed with respect to this Motion, the Court deems this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. R. 7-15.

[2] The Court largely set out the facts underlying this Motion in its June 26, 2013 Order granting the joint motion to dismiss Plaintiffs' original Complaint. (ECF No. 44.) The Court thus includes only the facts especially relevant to disposition of this Motion.

Burns communicated with "Dennis" via an email address of "WPacquisitisions@gmail.com," which is the same email address Meyer also used to contact Stratos.  (*Id.* ¶ 117–18.)

On April 18, 2011, Meyer and Burns had a seven-minute telephone call in which Meyer told Burns that he represented "Ken Dennis" and Soumaya in the Facebook transaction.  (*Id.* ¶ 94.)  Meyer confirmed various details about the transaction, including that "Dennis" was who he said he was, i.e., that he represented Slim and had access to the Facebook shares.  (*Id.* ¶¶ 94–97.)

The next day, ESG wired $2.8 million into a Venable client trust account according to instructions Venable forwarded to ESG.  (*Id*. ¶ 107.)  Meyer directed Venable's accounting department to deposit the funds in the "Venable LLP Escrow Account CA IOLTA."  (*Id.* Ex. C.)  Burns and "Dennis" stayed in contact about the details of the purported Facebook transaction.  (*Id.* ¶ 128.)

From April 20 to July 2011, Meyer and another Venable partner authorized various payments on behalf of Stratos from the Venable client trust account totaling over $2 million.  (*Id.* ¶ 124.)

During a series of telephone calls between July 7 and July 11, Stratos told Burns that the Facebook deal was imminent but that ESG needed to wire Soumaya an additional $7.2 million.  (*Id.* ¶¶ 136–37.)  Meyer emailed Burns the wire information on July 11, 2011, relaying "Soumaya's understanding" of the deal.  (*Id.* ¶ 139, Ex. I.)  In response to an email from Burns, Meyer relayed another letter to Burns from Soumaya that the "moneys . . . are non-refundable except in the event the pending transaction does not close as a result of the fault of the seller or the issuer."  (*Id.* ¶¶ 141–42 (emphasis omitted) (alteration removed).)  The next day, ESG wired $7.2 million to Soumaya's Bank of America account, which Meyer confirmed.  (*Id.* ¶¶ 153–54.)

On July 26, 2011, Bank of America closed Soumaya's account.  (*Id.* ¶ 159.)  Venable arranged for a transfer of over $5 million into a client trust account at Miller

Barondess LLP. (*Id.* ¶ 160.) In August 2011, Meyer aided Stratos and Soumaya in opening an investment account at UBS.

In August, Stratos called Burns and told him that ESG needed to wire another $1.25 million to secure the shares. ESG duly wired the funds into the UBS account. (*Id.* ¶ 171.) In total, ESG sent Soumaya $11.25 million. (*Id.*)

Throughout the fall of 2011, Stratos provided Burns with various reasons why the transaction had not closed, and Venable went "radio silent." (*Id.* ¶ 172.) On December 22, 2011, Burns emailed Dennis and Meyer threatening legal action if Soumaya did not procure the shares. (*Id.* ¶ 173.) Stewart Webb, Venable's counsel, stated that "Venable received no such transfer [of funds] and has no knowledge of the alleged transfer." (*Id.* ¶ 174, Ex. N.) On December 27, Webb informed Burns that Meyer's files listed the telephone number Burns provided for "Ken Dennis" "under the name of Troy Stratos, who is believed to be related to Mr. Dennis." (*Id.* ¶ 177, Ex. P.)

On March 7, 2013, ESG and its limited partners filed suit against Defendants. (ECF No. 1.) Defendants jointly moved to dismiss the Complaint (ECF Nos. 25, 26), and the Court granted that motion without prejudice. (ECF No. 44.) Plaintiffs filed their First Amended Complaint, alleging claims for (1) violation of § 10(b) of the Securities Exchange Act and Rule 10b-5; (2) fraud; (3) conversion; (4) aiding and abetting against Meyer and Venable; (5) conspiracy; (6) unjust enrichment; (7) breach of fiduciary duty against Meyer and Venable; and (8) unfair competition, Cal. Bus. & Prof. Code § 17200, against Meyer and Venable. (ECF No. 45.) Defendants again jointly moved to dismiss Plaintiffs' First Amended Complaint. (ECF Nos. 50, 51.) That Motion is now before the Court for decision.

### III. LEGAL STANDARD

**A. Rule 12(b)(6)**

Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement—to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); Fed. R. Civ. P. 8(a)(2). For a complaint to sufficiently state a claim, its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While specific facts are not necessary where a complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, it must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Iqbal*'s plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," but does not go so far as to impose a "probability requirement." *Id.* Rule 8 demands more than a complaint that is merely consistent with a defendant's liability—labels and conclusions, or formulaic recitals of the elements of a cause of action do not suffice. *Id.* Instead, the complaint must allege sufficient underlying facts to provide fair notice and enable the defendant to defend itself effectively. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When considering a Rule 12(b)(6) motion, a court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). The Court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A complaint should be dismissed
/ / /

only if "it appears beyond doubt that the plaintiff can prove no set of facts" supporting plaintiff's claim for relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

As a general rule, a court should freely grant leave to amend a dismissed complaint. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

**B. Fraud**

Fraud pleadings are subject to an elevated standard, requiring a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Particularity" means that fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–06 (9th Cir. 2003). Allegations under Rule 9(b) must be stated with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Accordingly, when suing more than one defendant, a plaintiff cannot "merely lump multiple defendants together" but rather must differentiate the allegations and "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.* at 764–65.

## IV. DISCUSSION

**A. Federal securities-fraud claims**

To state a claim for violation of section 10(b) and Rule 10b-5, Plaintiffs must plead six elements: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Thompson v. Paul*, 547 F.3d 1055, 1061

(9th Cir. 2008) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 156 (2008)). Each allegation must also satisfy the dual pleading requirements of Rule 9(b) and the PSLRA, which together require plaintiffs to plead specific, particularized factual allegations. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009); 15 U.S.C. § 78u-4(b)(1)(B). Conclusory allegations, unsupported by specific facts, are not enough to satisfy these requirements. *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061–70 (9th Cir. 2008).

   *1. Misrepresentations or omissions*

   Defendants argue that neither Venerable nor Meyer made any of the alleged misrepresentations at issue regarding the Facebook transaction's legitimacy. Defendants contend that Meyer simply communicated Soumaya's understanding of the deal, not his own. But Plaintiffs assert that it was Meyer himself who induced Burns to wire funds for the benefit of Stratos and Soumaya in April and July 2011.

   As the Court noted in its June 26, 2013 Order, "a lawyer or law firm cannot be liable for the representations of a client, even if the lawyer incorporates the client's misrepresentations into legal documents or agreements necessary for closing the transaction." *Schatz v. Rosenberg*, 943 F.2d 485, 495 (4th Cir. 1991); *see also Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011) ("For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.").

   Here, the email communication between Meyer and Burns again make clear that Soumaya was the maker of the alleged misrepresentations about the transaction's details—not Venable or Meyer. In Meyer's July 11, 2011 email, he speaks of "Soumaya's understanding" of what money will be wired and on what conditions the money was refundable. (FAC Ex. I.) By Meyer acting as a bare conduit for this information, his communications do not demonstrate that he was "the person or entity with ultimate authority over the statement[s]." *Janus Capital Grp.*, 131 S. Ct. at 2302.

1 Rather, Soumaya—and thus presumably Stratos—made the alleged misrepresentations
2 for the purposes of § 10(b).

3 Defendants further argue that Plaintiffs cannot establish that Venable or Meyer
4 made any actionable omissions, because they had no duty of disclosure. But
5 Plaintiffs, relying on *Thompson v. Paul*, 547 F.3d 1055 (9th Cir. 2008), contend that
6 attorneys who make representations to purchasers of securities assume the duty to
7 provide complete and nonmisleading information.

8 There are at least two problems with Plaintiffs' contention. First, as discussed
9 above, Venable and Meyer did not "make" the alleged misrepresentations concerning
10 the Facebook deal. Meyer was therefore not an "attorney who undert[ook] to make
11 representations to prospective purchasers of securities." *Id.* at 1063. Second, unlike
12 the law firm in *Thompson*, Venable did not represent "the seller of the securities," that
13 is, Facebook. *See id.* Soumaya was simply going to arrange the putative sale.
14 Venable and Meyer thus lacked any disclosure duty under *Thompson*.

15 *2. Scienter*

16 The PSLRA mandates that "the complaint shall, with respect to each act or
17 omission alleged to violate this chapter, state with particularity facts giving rise to a
18 strong inference that the defendant acted" with scienter. 15 U.S.C. § 78-u4(b)(2)(A).
19 Interpreting the PSLRA's text, the United States Supreme Court held that a
20 "complaint will survive . . . only if a reasonable person would deem the inference of
21 scienter cogent and at least as compelling as any opposing inference one could draw
22 from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,
23 324 (2007).

24 The Ninth Circuit has further elucidated the scienter requirement, holding that a
25 complaint must "allege that the defendants made false or misleading statements either
26 intentionally or with deliberate recklessness." *Zucco Partners*, 552 F.3d at 991
27 (internal quotation marks omitted).
28 / / /

1    Defendants argue that Plaintiffs have failed to plead any particularized facts
2 suggesting that Venable or Meyer actually knew that the Facebook transaction was
3 false.  They contend that Plaintiffs repeat their same "must have known" and "should
4 have known" allegations, which the Court previously determined failed to plead the
5 requisite cogent and compelling inference.  (ECF No. 44, at 9.)  Defendants further
6 aver that Meyer did not create Soumaya just to mask Stratos's identity, as the FAC is
7 "replete" with Soumaya's legitimate business activities, such as owning bank accounts
8 and filing for an IRS employer identification number.  Defendants also point out that
9 just because Meyer knew a few details about the Facebook transaction does not mean
10 that he necessarily knew it was false.  Lastly, Defendants argue that Meyer did not
11 know that "Dennis" and Stratos were one in the same; rather, Meyer believed that they
12 were two distinct persons acting for Soumaya.

13    In response, Plaintiffs point out that they no longer rest upon any "must have
14 known" or "should have known" allegations.  Further, they assert that they need only
15 plead Meyer's "access to the relevant information that belies fraudulent intent."
16 (Opp'n 11 (quoting *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, No. 10-CV-
17 03451-LHK, 2012 WL 1868874, at *19 (N.D. Cal. May 22, 2012).)  Plaintiffs identify
18 that Meyer had access to information demonstrating that Stratos and Soumaya had no
19 connection to Carlos Slim.  Plaintiffs also argue that Meyer knew that Stratos had not
20 used any of ESG's money for Facebook shares, as Meyer authorized several millions
21 of dollars in payments on Stratos's behalf from Venable's client trust account.

22    But Plaintiffs' inappositely rely on this access-to-information inference.  The
23 "access to relevant information" language originated in the Ninth Circuit's opinion in
24 *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008).  That case
25 concerned whether knowledge of "core operations" could be imputed to corporate
26 officers as a result of their positions.  *Id.* at 779.  The court held that management's
27 role in the company could be relevant to the scienter inquiry in certain circumstances,
28 / / /

1 including where the allegations "are particular and suggest that defendants had actual
2 access to the disputed information." *Id.* at 786.

3 In fact, the court in *Police Retirement Systems*—the case on which Plaintiffs
4 rely—held the opposite of what Plaintiffs propose. The court there held the
5 "'particularity' requirement of the PSLRA *cannot* be satisfied by a mere conclusory
6 assertion that Defendants had 'access to, and use of . . . information.'" *Police Ret.*
7 *Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *19. Rather,
8 "particularity requires pleading the who, what, where, when, and how" of the scienter
9 allegations. *Id.*

10 To be sure, the Supreme Court noted that the PSLRA does not demand that the
11 scienter inference be "of the 'smoking-gun' genre." *Tellabs, Inc.*, 551 U.S. at 324.
12 But while Plaintiffs repeatedly allege that Meyer knew the transaction was false, these
13 unadorned assertions are just that: allegations wholly lacking in any particularized
14 factual support demonstrating that Venable or Meyer actually did know that Stratos
15 had concocted the scheme to defraud ESG.

16 Nothing Meyer did for Stratos or Soumaya was inherently suspicious—and thus
17 does not bespeak his knowledge of the fraud. That Meyer knew some details of the
18 purported Facebook transaction, set up several bank accounts for Soumaya, facilitated
19 wire transfers from ESG on behalf of Soumaya, and disbursed funds to Stratos fails to
20 demonstrate that Meyer knew there was no actual deal in the works. All of these
21 activities cohere with an attorney assisting a legitimate deal between ESG and Stratos.
22 Additionally, even if Meyer confirmed to ESG that "Dennis" was real and that the
23 deal was on, this only implies that Meyer subjectively believed that both "Dennis" and
24 the transaction were genuine—not that they resulted from Stratos's wrongdoing.

25 Neither are there any particularized facts supporting a cogent inference that
26 Meyer knew that "Dennis" was just Stratos's alias. Even if Meyer contacted Stratos
27 via "WPacquisitions@gmail.com," this generic email address would not have put
28 / / /

Meyer on notice that Stratos and "Dennis" were one in the same—especially considering that there is no indication that there were any replies from that address.

Indeed, it seems as though Plaintiffs rest upon a flawed calculation: Meyer's knowledge of facially innocent facts about the deal plus the later knowledge that Stratos concocted this scheme does not equal that Meyer himself possessed knowledge of the deal's falsity when he represented Stratos and Soumaya. At best, the pleaded facts support that Meyer was blind to Stratos and Soumaya's nefarious deeds and thereby unwittingly facilitated the scheme. But while perhaps this means Meyer was careless as to what was really transpiring, Plaintiffs cannot conflate this inattentiveness with the intent or deliberate recklessness required under § 10(b). *See Zucco Partners*, 552 F.3d at 991.

### 3. Reliance

The reliance element "ensures that, for liability to arise, the requisite causal connection between a defendant's misrepresentation and a plaintiff's inquiry exists as a predicate for liability." *Stoneridge Inv. Partners, LLC*, 552 U.S. at 159. But despite their repeated assertions in the FAC that they relied on Venable and Meyer's alleged misrepresentations, Plaintiffs once again failed to establish through particularized facts that any alleged misrepresentations "played a substantial part in the [Plaintiffs] investment decision." *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009).

As the Court noted in the previous dismissal Order, ESG and "Dennis" began negotiating the Facebook deal around March 22 or 24, 2011—several weeks before Meyer ever had contact with ESG. While Meyer may have confirmed, albeit incorrectly, that "Dennis" was who he said he was and that he was representing Carlos Slim, Plaintiffs do not explain how these later assurances actuated a deal—and the subject of the PSLRA claim—that originated several weeks before Venable and Meyer even entered the picture. This is especially true considering that the securities broker who put ESG in contact with Stratos provided Burns with Venable's wire

information a day before Burns contacted Meyer. (FAC ¶ 91.) Burns and Stratos thus hashed out much of the purported deal without Venable or Meyer's assistance.

Once again, Plaintiffs failed to adequately plead particularized facts to support three crucial elements of their PSLRA claim. While Plaintiffs' FAC swelled with additional allegations, they still have not and cannot cure the frailties of their § 10(b) claim, which fails largely as a matter of law. Additional amendment would accordingly be futile. Thus, Plaintiffs' securities-fraud claim is **DISMISSED WITH PREJUDICE.**

### B. State-law fraud claim

Plaintiffs further have been unable to plead an actionable fraud claim under California law. The elements for a California fraud claim are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *UMG Recording, Inc. v. Bertelsmann AG*, 479 F.3d 1078, 1096 (9th Cir. 2007) (citing *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173 (2003)). But just like under their PSLRA claim, Plaintiffs failed to establish alleged misrepresentations attributable to Venable or Meyer, Venable or Meyer's knowledge of the falsity of any statements, and reliance by Plaintiffs. The Court therefore **DISMISSES WITH PREJUDICE** the state-law fraud claim. *See In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1045–46 (N.D. Cal. 2009). This claim is consequently **DISMISSED WITH PREJUDICE**.

### C. Plaintiffs' remaining state-law claims are untimely

In its June 26, 2013 Order, the Court dismissed Plaintiffs' then-remaining state-law claims as untimely under California Code of Civil Procedure section 340.6's strict one-year statute of limitations for legal-services claims. (ECF No. 44, at 16.) But the Court granted ESG leave to amend the Complaint to clarify whether it intended "to constrain its claims only to Defendants' conduct as an escrow agent, and not as providers of legal services." (*Id.*)

///

In their FAC, Plaintiffs simply assert that "Venable's and Meyer's conversion of Plaintiffs' funds occurred in the context of Venable and Meyer acting as escrow agent with respect to those funds." (FAC ¶ 229.) Plaintiffs contend that by "agreeing to receive, hold[,] and distribute Plaintiffs' funds in a specified manner, Venable and Meyer owed Plaintiffs' a fiduciary duty," which they allegedly breached by misappropriating Plaintiffs' money. (Opp'n 22.) But Defendants contend that the FAC is "replete" with allegations of Venable actually providing legal services and that there is no indication that Venable was acting as an escrow agent with respect to ESG's wire transfers to Soumaya.

Under the California Financial Code, "escrow" is defined as "any transaction in which one person . . . delivers any written instrument, money, evidence of title to real or personal property, or other thing of value to a third person to be held by that third person *until the happening of a specified event or the performance of a prescribed condition*." Cal. Fin. Code § 17003(a) (emphasis added).

Venable is exempt from the Financial Code's regulation of escrow agents. Cal. Fin. Code § 17006(2) (exempting any person "licensed to practice law in California who has a bona fide client relationship with a principal in a . . . personal property transaction and who is not actively engaged in the business of an escrow agent"). Yet in *Von Rott v. Johnson*, the California Court of Appeal still referenced Financial Code section 17003 in determining whether an attorney was acting as an escrow agent and thus outside the protection of section 340.6's one-year statute of limitation. In that case, the court determined that the attorney "acted simply as an escrow, holding shares of [a] corporation for the benefit of plaintiff" until a business's purchaser completed payments. *Von Rott v. Johnson*, 148 Cal. App. 3d 608, 612–13 (1983).

But noticeably absent in this case is any condition that Soumaya needed to satisfy before Venable would release ESG's funds. Indeed, in his own April 19, 2011 letter to Meyer, Burns stated, "Please use this letter as authorization to receive and release the $2,800,000 sent by ESG Capital Partners, LP to Soumaya Securities,

1 LLC." (FAC Ex. B.) Nowhere in this letter—or elsewhere for that matter—does ESG condition the release of funds on the occurrence of some contingency. So, notwithstanding Plaintiffs' terse allegations, Venable did not act as an escrow agent for the Facebook deal; instead, it simply released the funds as soon as ESG wired them to Venable.

Since Plaintiffs have been unable to establish that Venable and Meyer were acting outside the scope of providing legal services, section 340.6's one-year statute of limitations applies. Plaintiffs remarkably assert that the "limitations period commences only after a plaintiff 'discovers' he was harmed by an attorney's wrongful act or omission." (Opp'n 23.) But the plain text of section 340.6 flatly contradicts this argument. The section provides that an action "shall be commenced within one year after the plaintiff discovers, or *through the use of reasonable diligence should have discovered*, the facts constituting the wrongful act or omission." Cal. Civ. Proc. Code § 340.6(a) (emphasis added). And as the Court already determined, "ESG undoubtedly possessed knowledge sufficient to put them on inquiry as to Venable and Meyer's potential involvement in the scheme" in December 2011, and the one-year statute of limitations therefore expired in December 2012—some three months before Plaintiffs filed suit. (*See* ECF No. 1.)

Section 340.6's one-year limitations period does not apply to "actual fraud." Civ. Proc. Code § 340.6(a). But, as discussed above, to the extent that Plaintiffs replead any actual-fraud allegations, they fall along with Plaintiffs' PSLRA claim.

The Court therefore **DISMISSES WITH PREJUDICE** Plaintiffs' remaining state-law claims.

### D. Limited partners' standing and *in pari delicto* defense

As the Court determines that Plaintiffs have insufficiently pleaded their PSLRA claim and that their state-law claims are untimely, the Court need not address whether the limited partners have standing to assert these claims directly or whether the *in pari delicto* defense bars Plaintiffs' claims.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' consolidated Motion (ECF Nos. 50, 51). Plaintiffs' case is accordingly **DISMISSED WITH PREJUDICE**.

Further, the Court notes that Plaintiffs served Stratos on June 6, 2013, which means Stratos was obligated to answer by June 27, 2013. But to date, Stratos has neither answered nor otherwise filed an appearance. Plaintiffs are therefore **ORDERED TO SHOW CAUSE** why their case against Stratos should not be dismissed for lack of prosecution. Plaintiffs shall respond in writing by August 22, 2013.

**IT IS SO ORDERED.**

August 15, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**