O

United States District Court
Central District of California

| | |
|---|---|
| ESG CAPITAL PARTNERS LP and its LIMITED PARTNERS,<br><br>            Plaintiffs,<br><br>    v.<br><br>TROY STRATOS; VENABLE LLP; DAVID MEYER; DOES 1–10, inclusive,<br><br>            Defendants. | Case No. 2:13-cv-01639-ODW(SHx)<br><br>**ORDER DENYING MOTION FOR REVIEW OF NONDISPOSITIVE RULING OF MAGISTRATE JUDGE [135]** |

## I. INTRODUCTION

Finding them grossly overbroad and served for an improper purpose, Magistrate Judge Hillman quashed subpoenas Plaintiff ESG Capital Partners served on now-nonparties Venable LLP and David Meyer and imposed sanctions. Instead of serving appropriately tailored subpoenas, ESG attempts to breathe life back into the two failed subpoenas, arguing that this Court should reverse the Magistrate Judge's decision under Federal Rule of Civil Procedure 72. After extensively reviewing the subpoenas, Judge Hillman's Order, and the parties' arguments, the Court agrees that the subpoenas were grossly overbroad, served for an improper purpose, and sought privileged information. The Court also finds that Judge Hillman did not err in

imposing sanctions. The Court therefore **DENIES** ESG's Motion for Review of Nondispositive Ruling of Magistrate Judge. (ECF No. 135.)[1]

## II. PROCEDURAL HISTORY

On March 7, 2013, Plaintiffs ESG Capital Partners LP and its limited partners (collectively, "ESG") filed this action against Defendants Troy Stratos, Venable LLP, and David Meyer. (ECF No. 1.) ESG alleged claims for violations of Securities Exchange Act § 10(b) and Rule 10b-5 as well as common-law fraud arising out Stratos's alleged scheme to defraud Plaintiffs of $11.25 million in connection with the purchase of pre-IPO Facebook shares.

After two rounds of motions to dismiss, the Court dismissed ESG's claims against Venable and Meyer—Stratos's law firm and lawyer, respectively—with prejudice, finding that ESG had not and likely could not as a matter of law comply with the heightened pleading requirements under the federal Private Securities Litigation Reform Act ("PSLRA"). (ECF No. 56.) The Court subsequently issued a partial judgment in those Defendants' favor. (ECF No. 78.)

On August 26, 2013, Stratos answered the First Amended Complaint, thereby lifting the PSLRA's mandatory discovery stay. (ECF No. 69); 15 U.S.C. § 78u-4(b)(3)(B) ("In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss . . . ."). ESG eventually propounded various forms of discovery against Stratos, including requests for admission, interrogatories, and moving for leave to depose Stratos while he is confined in federal custody.

On or about January 29, 2014, ESG served now nonparties Venable and Meyer with subpoenas *ad testificandum* and *duces tecum* (the "Venable and Meyer subpoenas"). On March 17, 2014, Venable and Meyer moved to quash the subpoenas
///

---

[1] After carefully considering the papers filed with respect to this Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

and for protective orders, and the parties filed a joint stipulation as required by Local Rule 37-2. (ECF Nos. 119, 121.)

On April 8, 2014, Magistrate Judge Hillman granted the Motions, thus quashing the subpoenas and entering protective orders[2] in favor of Venable and Meyer. (ECF No. 130.) Judge Hillman made several findings: (1) the subpoenas were "grossly overbroad"; (2) ESG's real purpose was to gather information against Venable and Meyer in the event that the Ninth Circuit reverses this Court's partial dismissal, thus "circumvent[ing] the policies behind the Private Securities Litigation Reform Act and its mandatory discovery stay"; (3) ESG sought facially privileged documents and information and had not established either waiver of the attorney-client privilege or the crime-fraud exception; and (4) the subpoenas were unduly burdensome. Judge Hillman also sanctioned ESG by requiring it to pay Venable and Meyer's attorneys' fees and expenses, finding that its position was "without substantial justification."

On April 16, 2014, ESG moved this Court to review the Magistrate Judge's Order under Federal Rule of Civil Procedure 72. (ECF No. 135.) Venable and Meyer timely opposed. (ECF Nos. 145, 146.) That Motion is now before the Court for decision.

### III. LEGAL STANDARD

A party may object to a nondispositive pretrial order of a United States magistrate judge within 14 days after service of the order. Fed. R. Civ. P. 72(a). Moreover, the Central District of California's Local Rules state that a motion for review of a magistrate judge's ruling must "designat[e] the specific portions of the ruling objected to and stat[e] the grounds for the objection." L.R. 72-2.1.

A district court will uphold a magistrate judge's decision unless it was "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The

---

[2] Importantly, while Magistrate Judge Hillman stated that he granted Venable and Meyer's Motions for Protective Orders, he did not include any language precluding ESG from serving appropriately tailored subpoenas. The Court therefore construes the Order as only protecting Venable and Meyer from the particular subpoenas ESG had served.

clearly erroneous standard applies to findings of fact and is "significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993) (internal quotation marks omitted); *see also Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1014 (9th Cir. 1997). The "contrary to law" standard applies to the magistrate judge's legal conclusions, which are reviewed de novo. *See, e.g.*, *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 971 (C.D. Cal. 2010); *Wolpin v. Phillip Morris Inc.*, 189 F.R.D. 418, 420 (C.D. Cal. 1999).

## IV. DISCUSSION

The Court finds that Judge Hillman did not err in finding that the Venable and Meyer subpoenas were grossly overbroad, unduly burdensome, and served for an improper purpose.

**A. Whether the subpoenas were "grossly overbroad" and "unduly burdensome"**

In assessing the propriety of a subpoena, a court must consider the discovery standards under both Federal Rules of Civil Procedure 26 and 45. *See In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal. 2014). Rule 26 generally permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

Under Rule 26, a court may issue an order to protect a person from whom discovery is sought "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 45 echoes this empowerment, requiring a court to quash a subpoena that requires the product of privileged material or subjects a person to "undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv).

In determining whether a subpoena presents an undue burden, courts balance the burden on the subpoenaed party against the value the information sought would bring to the subpoenaing party, considering such factors as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered

by it, the particularity with which the documents are described and the burden imposed." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (internal quotation marks omitted).

Judge Hillman found that the Venable and Meyer subpoenas were "grossly overbroad" because ESG sought documents and information from nonparties who are entitled to extensive protections from discovery under Ninth Circuit case law. Judge Hillman also found that ESG repeatedly refused to narrow the subpoenas, thus exacerbating the overbreadth problem.

ESG contends that Judge Hillman erred in finding that the subpoenas were overbroad because neither Venable nor Meyer challenged 14 out of the 19 document requests ESG served, nor did they offer any argument why their depositions should not proceed. ESG also points to several emails, arguing that they offered to narrow the subpoenas three times in writing. They assert that the only reason that they did not narrow the subpoenas was because Venable and Meyer admitted that they would move to quash the subpoenas regardless of any refinement.

But Venable and Meyer argue that to prevail against Stratos, ESG only needs to show that Stratos defrauded them in 2011, but their subpoenas sought vastly overbroad document production and testimony that had nothing to do with the alleged 2011 fraud. ESG sought Venable's entire communications with, and work product regarding, Stratos on all matters Venable handled for him with no time limit. Five of the subpoena topics sought testimony and all documents broadly "concerning" Venable's communications with Stratos without any time or subject-matter limitations. ESG also sought all documents and testimony "concerning" the departure of two Venable partners regardless of any connection to Stratos as well as testimony and all documents "concerning" Venable's client-trust-account practices. Venable and Meyer further point out that 33 of ESG's requests included no time limit whatsoever. Finally, the Nonparties dispute that ESG offered to narrow the subpoenas, quoting Jack Siegal, ESG's attorney, stating that he would only be

"willing to further discuss narrowing the subpoena, if Venable and Meyer [would] commit to producing documents and testify." (Mar. 24, 2014 Kahn Decl. ¶ 9.)

While Judge Hillman's ultimate overbreadth finding is an issue of law the Court reviews de novo, the Court must accept Judge Hillman's underlying factual findings unless clearly erroneous. After reviewing the subpoenas, the Court does not have a "definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods.*, 508 U.S. at 623. Venable and Meyer are correct that the vast majority of the document and testimony requests have no time limitation—therefore requiring the Nonparties to cull their archives for a beach worth of sand when the Facebook scheme might only concern a few grains. Many of the requests specifically mention the Facebook transaction but then say "including but not limited to" that information. These subject-matter restrictions are thus illusory; they provide no limit at all on the information the Nonparties must produce.

It is also concerning that ESG sought all information relating to Venable's entire representation of Stratos—regardless of any relationship to the Facebook deal. Venable would apparently have to produce every single document related to its representation of Stratos. While no one can fault ESG for wanting to cover its bases with a slightly broader swath of information, ESG painted its subpoenas with such a broad brush that it entirely swept away the canvas in the process.

Neither can the Court find fault with Judge Hillman's conclusion that ESG repeatedly refused to narrow the subpoenas. There is evidence on both sides of the issue, and each party disputes how the Court should interpret that information. But the tenor of Siegal's emails suggests that ESG was not offering a no-strings-attached modification; rather, his offer was highly conditional at best.

The Court therefore finds that Judge Hillman did not err in finding that the subpoenas were "grossly overbroad" and constituted an undue burden. The Court accordingly **DENIES** ESG's Motion on this ground.

/ / /

**B.     ESG's "real purpose" in serving the subpoenas**

Judge Hillman also found that the gross overbreadth of the Venable and Meyer subpoenas and ESG's repeated refusal to narrow them demonstrated that ESG's real purpose was to gather evidence against Venable in the event that the Ninth Circuit reverses this Court's previous dismissal Order.  The Magistrate concluded that permitting "this discovery while plaintiffs' appeal is pending would allow plaintiffs to improperly circumvent the policies behind the Private Securities Litigation Reform Act and its mandatory discovery stay." (ECF No. 130, at 1); *see also* 15 U.S.C. § 78u-4(b)(3)(B) ("In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss . . . .").

Plaintiffs argue that this finding was incorrect because the only evidence of this fact was Nonparties' counsel's declaration stating that ESG was using the subpoenas to obtain evidence against Stratos.  ESG contends that there is no dispute that Plaintiffs have pursued all available means to collect evidence against Stratos.

Venable and Meyer disagree that ESG has been diligent in prosecuting its action against Stratos.  They assert that ESG only took its first discovery step of serving Stratos with requests for admission just before serving their subpoenas on Venable and Meyer.  They also argue that ESG only served further discovery on Stratos after Nonparties' counsel told ESG that their failure to seek discovery evidenced their lack of interest in Stratos.  Further, Venable and Meyer point out that ESG admitted that it was pursuing Stratos as a "cat's paw" to support other litigation against Miller Barondess and its partner Erik Syverson in Los Angeles County Superior Court. (Mot. 11; ECF No. 119, at 27.)

It is of course impossible for Judge Hillman or anyone else to know exactly how ESG intends to prosecute its action.  It would be fallacious to fault the Magistrate Judge or anyone else for not being able to read minds with absolute precision.  But as one can discern from a cursory review of this case's already lengthy docket, Judge

Hillman has spent extensive time addressing discovery in this action. The Court cannot find clear error in his inference that ESG's real purpose was to seek discovery against Venable and Meyer for potential later litigation—especially after the Court just considered the subpoenas' vast overbreadth. Further undergirding Judge Hillman's finding is ESG's concession that it is pursuing its claims against Stratos in part to further its aiding-and-abetting litigation in state court. Knowing all this information and having dealt one-on-one with the parties, Judge Hillman did not err in inferring that ESG sought the discovery for an improper purpose.

**C.     Whether the information and documents were privileged**

Judge Hillman also found that ESG sought facially privileged information and had not established either the crime-fraud exception or waiver of the attorney-client privilege. Though the Court finds that Stratos waived the privilege in part, the Court agrees with Judge Hillman's end result.

*1.    Crime-fraud exception*

Under California law, the attorney-client privilege provides that "the client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ." Cal. Evid. Code § 954. But there is no privilege if the client sought the lawyer's services to commit a crime or fraud. *Id.* § 956.

To establish the crime-fraud exception, the proponent must establish two elements: (1) a prima facie case of fraud; and (2) a reasonable relationship between the fraud and the attorney-client communication. *Cunningham v. Conn. Mut. Life Ins.*, 845 F. Supp. 1403, 1412 (S.D. Cal. 1994). In California, fraud requires "(1) a misrepresentation of material fact, (2) knowledge of the representation's falsity, (3) intent to deceive, and (4) the right to rely on the representation." *Id.*

ESG argues that Venable has previously argued in moving to dismiss ESG's Complaint that Meyer was the speechwriter and Soumaya Securities was the speaker in conveying information to Burns and ESG. (*See* ECF No. 54, at 6.) This Court also

1 noted that Stratos used Meyer to "unwittingly facilitate[] the scheme." (ECF No. 56, at 11.) ESG contends that Venable knew that Stratos intended to misappropriate ESG's $11.25 million because it produced thousands of pages of documents to the Government for Stratos's criminal prosecution.

But Venable and Meyer fault ESG for not supplying any actual evidence to establish a prima facie case of fraud. They point out that ESG stated that "Plaintiffs' *allegations* create 'a *prima facie* case that [Meyer] was retained in order to promote intended or continuing criminal or fraudulent activity.'" (*See* Mot. 1 (alteration in original) (emphasis added).) Allegations, Nonparties argue, are not evidence.

The Court is hard-pressed to find that Judge Hillman erred in concluding that ESG had not established the crime-fraud exception when it appears that ESG has not presented him or this Court with any evidence to support their contention. Everyone involved in this litigation likely agrees that Stratos's dealings were not completely aboveboard. But something more than a round-about inference is necessary to establish a prima facie case of fraud—especially considering that ESG specifically brings a fraud claim against Stratos. They cannot cut a fraud claim from whole cloth, using only their allegations to establish the prima facie case wholly untethered from actual evidence.

Neither has this Court previously found that ESG established any elements of the crime-fraud exception. The Court's previous dismissal Orders rested wholly upon ESG's allegations in its original Complaint and First Amended Complaint—not upon actual evidence. The Court also did not make any factual findings, let alone mention the attorney-client privilege or the crime-fraud exception. This Court's previous rulings are therefore wholly inapposite to the current inquiry.

ESG also finds little support in Venable producing documents to the Government. It is unclear whether the Government subpoenaed these documents from Venable. But even if the Government did not, Venable supplying requested

/ / /

1  information for use in a criminal prosecution hardly indicates that the supplying party
2  vouches for the Government's allegations.

3  While Stratos might not be the most sympathetic individual, the Court hesitates
4  to interfere with the attorney-client privilege without a solid foundation in actual
5  evidence. The Court is loath to see someone potentially abuse the privilege to commit
6  a fraud. But the privilege would quickly mean nothing if its iron walls could fall
7  simply because someone makes the featherweight argument that a client is up to no
8  good. The Court accordingly **DENIES** ESG's Motion on this ground.

9  *2.  Waiver*

10  Under California law, a waiver of the attorney-client privilege occurs when a
11  client "has disclosed a significant part of the communication or has consented to
12  disclosure made by anyone." Cal. Evid. Code § 912(a). But to waive the privilege, a
13  client must disclose the contents of the protected conversations—not merely the fact
14  that they occurred. *Mitchell v. Super. Ct.*, 37 Cal. 3d 591, 602 (1984).

15  ESG contends that Stratos waived the attorney-client privilege by disclosing
16  emails and letters between himself and Venable discussing Soumaya's business and
17  the distribution of ESG's money and by answering ESG's Request for Admission
18  No. 3 in which Stratos described his conversations with Meyer regarding Soumaya's
19  formation.

20  Venable and Meyer argue that ESG had to either obtain a written privilege
21  waiver from Stratos or ask the Court to find a waiver in a proceeding involving
22  Stratos, but they never took either step. Instead, ESG asks for a blanket waiver of the
23  entire history of Venable's representation of Stratos.

24  The Court has extensively reviewed the emails and letters Stratos turned over to
25  ESG (ECF No. 119-5, Exs. B–D), and his response to Request for Admission No. 3
26  (ECF No. 119-2, Ex. G., at 2.) First, this information hardly establishes a blanket
27  waiver of the attorney-client privilege as it applies to Venable's entire representation
28  of Stratos. Second, many of the emails involve third parties that do not fall under the

attorney-client-privilege umbrella. But Stratos's voluntary disclosure of letters directing Venable to disburse funds on retainer with the firm and dealing with a residential-property lease do constitute a waiver of the attorney-client privilege only with respect to those documents and information. Stratos also waived the privilege in responding to Request for Admission No. 3 solely with respect to Meyer's recommendation that Stratos create a limited-liability company—Soumaya Securities—for Stratos to conduct business.

While the Court's findings partially contravene Judge Hillman's no-waiver finding, the end result remains the same. The Venable and Meyer subpoenas were grossly overbroad and not limited only to the information subject to Stratos's waiver. The Court's new findings do not save them. The Court therefore **DENIES** ESG's Motion on the waiver ground.

### D. Sanctions

Rule 37, which governs depositions, provides that if a court grants a protective order, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). But the Court may not impose sanctions if, among others, the opposing party's position was substantially justified. *Id.* (a)(5)(A)(ii). Rule 45, the rule governing subpoenas, also provides that a party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). A court "must" enforce this provision through an appropriate sanction, which may include lost wages and reasonable attorneys' fees. *Id.*

Citing to *Rispoli v. King County*, 297 Fed. App'x 713, 715 (9th Cir. 2008), ESG argues that this Court should review Judge Hillman's imposition of sanctions de novo because he failed to make factual findings relating to substantial justification. ESG asserts that it was substantially justified in serving the Venable and Meyer subpoenas

because "[t]hey are the victims of massive fraud and are entitled to broad discovery that may help prove their claims." (Mot. 13.) They point out that Venable and Meyer are crucial sources of information concerning Stratos's dealings since they were the law firm and lawyer who assisted him—knowingly or not—in the Facebook scheme. ESG also contends that they were improperly denied an opportunity to be heard since Judge Hillman awarded sanctions without an in-person hearing.

Venable and Meyer disagree that Judge Hillman did not make any factual findings, citing to the seven specific factual findings he made in the order granting their motion to quash. They also point out that ESG had at least two attempts to be heard via their written submissions and will have another opportunity to be heard in responding to the Nonparties' recently filed Request for Fees. Finally, Venable and Meyer argue that Rule 45—unlike Rule 37—independently authorizes a discovery sanction and says nothing about an opportunity to be heard.

The Court finds that it must review de novo whether ESG was substantially justified in its discovery position, as the Magistrate Judge did not make factual findings specifically on this issue. *See Rispoli*, 297 Fed. App'x at 715; *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 845–46 (9th Cir. 2004); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1408 (9th Cir. 1990); *U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Constr. Co., Inc.*, 857 F.2d 600, 603 (9th Cir. 1988). While Judge Hillman made factual findings, those findings do not address whether ESG was substantially justified in taking the discovery position that it did.

The term "substantial justification" means that there is a "genuine dispute" or "reasonable people could differ" on the issue. *Lee v. Walters*, 172 F.R.D. 421, 425 (D. Or. 1997) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Having extensively reviewed the subpoenas at issue and Judge Hillman's background rationale for quashing them, the Court cannot find that reasonable people would differ on whether they were appropriate. ESG included essentially no time or subject-matter limits, thereby requiring Venable and Meyer to produce and testify to essentially

every single document related to their representation of Stratos. The Court does not fault ESG for wanting to obtain "broad discovery," but discovery has its limits—even for "victims of a massive fraud."

Neither did Judge Hillman violate ESG's due-process rights in not holding an in-person hearing prior to imposing sanctions. Rule 37 speaks of an "opportunity to be heard." Fed. R. Civ. P. 37(a)(5)(A). Judge Hillman did hear from ESG via the parties' Joint Stipulation Pursuant to L.R. 37-2 Concerning Nonparty Venable LLP's Motion for Protective Order and Motion to Quash. (ECF No. 119, at 38.) What's more, ESG will have another opportunity to address the sanction amount in opposing the Request for Fees.

The United States Supreme Court has also held that

> the right of oral argument as a matter of procedural due process varies from case to case in accordance with differing circumstances, as do other procedural regulations. Certainly the Constitution does not require oral argument in all cases where only insubstantial or frivolous questions of law, or indeed even substantial ones, are raised.

*Fed. Commc'ns Comm'n v. WJR, The Goodwill Station*, 337 U.S. 265, 276 (1949). Rather, the right to oral argument, if any, depends on a case-by-case determination of the particular interests involved and circumstances affected. *Id.* at 277.

Venable and Meyer's previous motions to quash did not raise anything earthshattering such that the Magistrate Judge had to have heard from the parties in person before imposing sanctions. Both sides are represented by well-established firms and have demonstrated in the past their aptitude for advocacy. It would be strange to think that ESG held on to some smoking-gun evidence for an oral hearing that would save them from sanctions. If they had such information, they certainly would have—or at least should have—included it in their written submissions. Due process can require no more.

///

The Court therefore finds that Judge Hillman appropriately awarded sanctions under both Rule 37(a)(5) and Rule 45(d)(1) and **DENIES** ESG's Motion on this ground.

Venable and Meyer also request that this Court award them reasonable attorneys' fees expended in defending against this Motion—an issue Judge Hillman of course has not had a chance to address. As noted, Rule 45(d)(1) authorizes the imposition of sanctions when a party serving a subpoena fails to take reasonable steps to avoid imposing an undue burden on the subpoenaed party. While this Rule 72 Motion is not a subpoena, it arises out of the Venable and Meyer subpoenas and could have potentially resulted in the Court reviving them if the Court reversed Judge Hillman's decision. This Motion also continues to subject Venable and Meyer to undue burden by having to defend against grossly overbroad subpoenas based on a position for which ESG has no substantial justification. The Court therefore finds it appropriate for Judge Hillman to include reasonable attorneys' fees incurred by Venable and Meyer in defending against this Motion in his previous imposition of sanctions. The Court will leave to further briefing before the Magistrate Judge the exact amount of those fees. But the Court cautions Venable and Meyer that they must fully support their fee request through actual documentation and not merely a terse attorney declaration.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V. CONCLUSION

As Venable and Meyer point out, nothing stopped ESG from serving appropriately tailored subpoenas on the Nonparties; Judge Hillman only quashed the particular subpoenas as issue. And after considering Judge Hillman's findings, the Court finds that he did not err in quashing the subpoenas. The Court therefore **DENIES** ESG's Motion for Review of Nondispositive Ruling of Magistrate. (ECF No. 135.)

**IT IS SO ORDERED.**

May 16, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**